Daniel G. Shay, CA #250548
danielshay@tcpafdcpa.com
LAW OFFICE OF DANIEL G. SHAY
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
Tel: 619.222.7429
Fax: 866.431.3292

Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Counsel for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA OLMOS, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>FIA CARD SERVICES, N.A., a national bank,<br><br>     *Defendant*. | Case No.  3:15-cv-02786-BAS-BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Cynthia A. Bashant<br>Magistrate: Hon. Bernard G. Skomal<br><br>Hearing Date:    February 8, 2016<br>Courtroom:      4B |

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................1

II. NATURE OF THE ACTION ...................................................................2

    A.   Common Facts Applicable to All Members of the Class .......................2

    B.   Facts Specific to Plaintiff Olmos .........................................................3

    C.   The Proposed Class ...............................................................................3

III. ARGUMENT ..........................................................................................3

    A.   The Class is Ascertainable because it is Defined by Reference to Objective Criteria. .................................................................................5

    B.   The Class Satisfies Rule 23(a)'s Four Requirements. ...........................5

        i.   The Class is sufficiently numerous because thousands of individuals nationwide have received Defendant's text messages ..............................................................................6

        ii.   Classwide resolution will provide uniform answers to common questions of both law and fact .............................................7

        iii.   Plaintiff's claims are typical because she has been injured by the same standardized course of conduct as all other Class members—Defendant's unlawful text messaging .............8

        iv.   Plaintiff and her counsel have no conflicts with and are committed to adequately representing the proposed Class .................9

    C.   The Class Satisfies the Requirements of Rule 23(b)(2) and (b)(3) ........10

        i.   Rule 23(b)(2) is satisfied. ...................................................11

        ii.   Rule 23(b)(3) is satisfied ....................................................11

IV. CONCLUSION .......................................................................................15

## TABLE OF AUTHORITIES

Cases

*Amchem Prods. Inc. v. Windsor*,
　　521 U.S. 591 (1997) ...................................................12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
　　133 S. Ct. 1184 (2013) ...................................................4

*Arnold v. United Artists Theatre Circuit, Inc.*,
　　158 F.R.D. 439 (N.D. Cal. 1994) ...................................................6

*Campbell-Ewald Co. v. Gomez*,
　　2015 WL 246885 (U.S. May 18, 2015)...................................................1

*Celano v. Marriott Int'l, Inc.*,
　　242 F.R.D. 544 (N.D. Cal. 2007) ...................................................6

*Ellis v. Costco Wholesale Corp.*,
　　657 F.3d 970 (9th Cir. 2011)...................................................4

*Gen. Tel. Co. of the Southwest v. Falcon*,
　　457 U.S. 147 (1982) ...................................................9

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998)...................................................9, 11

*Hanon v. Dataproducts Corp.*,
　　976 F.2d 497 (9th Cir. 1992) ...................................................9

*Harris v. Palm Springs Alpine Estates, Inc.*,
　　329 F.2d 909 (9th Cir. 1964) ...................................................6

*Holloway v. Full Spectrum Lending*,
　　2007 WL 7698843 (C.D. Cal. Jun. 26, 2007) ...................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
　　213 F.3d 454 (9th Cir. 2000) ...................................................9

*Kristensen v. Credit Payment Servs.*,
　　12 F. Supp. 3d 1292 (D. Nev. 2014) ...................................................13

*Martinez v. Bechtel Corp.*,
　　1975 WL 274 (N.D. Cal.1975)...................................................6

iii

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

1  *Mazur v. eBay Inc.*,
2      257 F.R.D. 563 (N.D. Cal. 2009) ...................................................................5
3  *Mazza v. Am. Honda Motor Co., Inc.*,
4      666 F.3d 581 (9th Cir. 2012).................................................................12
5  *Murray v. Fin. Visions, Inc.*,
6      2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ........................................11
7  *Murray v. GMAC Mortg. Corp.*,
8      434 F.3d 948 (7th Cir. 2006)..................................................................14
9  *O'Connor v. Boeing N. Am., Inc.*,
10      184 F.R.D. 311 (C.D. Cal. 1998) ............................................................5
11  *Parra v. Bashas', Inc.*,
12      536 F.3d 975 (9th Cir. 2008)................................................................7, 8
13  *Pitts v. Terrible Herbst, Inc.*,
14      653 F.3d 1081 (9th Cir. 2011) .................................................................1
15  *Schwartz v. Harp,*
16      108 F.R.D. 279 (C.D. Cal. 1985) ............................................................9
17  *Silbaugh v. Viking Magazine Servs., Inc.*,
18      278 F.R.D. 389 (N.D. Ohio 2012)..........................................................13
19  *Stemple v. QC Holdings, Inc.*,
20      2014 WL 4409817 (S.D. Cal. Sept. 5, 2014) .........................................5
21  *Vinole v. Countrywide Home Loans, Inc.*,
22      571 F.3d 935 (9th Cir. 2009)..................................................................12
23  *Wal-Mart Stores, Inc. v. Dukes,*
24      131 S. Ct. 2541 (2011) ...............................................................4, 7, 14
25  *Walters v. Reno,*
26      145 F.3d 1032 (9th Cir. 1998)................................................................11
27  *Wolin v. Jaguar Land Rover N. Am., LLC,*
28      617 F.3d 1168 (9th Cir. 2010)................................................................14

**Statutes**

47 U.S.C. § 227 *et seq.* ........................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ........................................................ *passim*

**Treatises**

Alba Conte & Herbert Newberg,

    *Newberg on Class Actions* § 3:5 (4th ed. 2002) ..............................................6

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

# I. INTRODUCTION

Even at the outset, this case satisfies the prerequisites for class certification.[1] Through a standardized course of conduct, Defendant FIA Card Services, N.A. ("FIA") independently acquired thousands of cellular telephone numbers, without the knowledge or input of the cellphone users, and sent thousands of identical text messages to these numbers, simultaneously and without active human involvement, using automatic telephone dialing equipment.

All of these messages uniformly violated (or did not violate) the same provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), which prohibits companies like FIA from using automatic telephone dialing systems to send text messages to cellphones, absent the prior express consent of the message recipients. Moreover, these TCPA violations caused identical injuries to Plaintiff and the members of a putative Class of individuals (defined below), who suffered the same invasions of privacy and violations of statutory rights and who are all entitled to identical calculations of statutory damages. Furthermore, the telephone numbers contacted by FIA, as well as the number of statutory violations committed towards each, can be readily and objectively identified through Defendant FIA's own records.

---

[1] Plaintiff files this motion at the outset of the litigation to prevent Defendant from attempting any so-called "pick-off" to moot her representative claims (*i.e.*, attempting to terminate her standing to assert class claims by tendering to her the full amount of her individual claims). Although the Ninth Circuit has held that "a rejected offer of judgment for the full amount of a putative class representative's individual claim" does not "moot[] a class action complaint where the offer precedes the filing of a motion for class certification," *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1084 (9th Cir. 2011), the Supreme Court recently granted certiorari in a case involving "pick-off" issues, leaving uncertain the Ninth Circuit's holding in *Pitts*. *See Campbell-Ewald Co. v. Gomez*, No. 14-857, 2015 WL 246885 at *1 (U.S. May 18, 2015). Plaintiff requests leave to supplement this motion after discovery on relevant issues.

1

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

As such, the proposed Class is ascertainable and satisfies each of the prerequisites to certification under Rules 23(a), (b)(2), and (b)(3), and this motion should be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that the Court (1) enter and reserve ruling on her motion for class certification; (2) allow for discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a supplemental memorandum in support of her motion for class certification upon the conclusion of class-wide discovery; (4) grant her motion for class certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems reasonable and just.

## II. NATURE OF THE ACTION

### A. Common Facts Applicable to All Members of the Class.

Defendant FIA, a large national bank, services millions of credit card accounts for consumers throughout the United States. (See Plaintiff's Class Action Complaint and Demand for Jury Trial, Dkt. 1 at ¶ 11 ["Compl."].) It regularly calls, emails, and sends text messages to these consumers, mostly at numbers they willfully provide. (*Id*.) Unfortunately, FIA also independently discovers telephone numbers on its own, often by using unreliable methods like "skip tracing" or "number trapping." (*Id*. ¶ 12) FIA necessarily lacks prior express consent to call these numbers—which it acquires without consumer knowledge or input—and yet it sends them text messages anyway. (*Id*.) It has sent these text messages simultaneously, by the thousands, using advanced telephone autodialing equipment having the capacity to store or produce telephone numbers and to dial such numbers, *en masse*, without any need for human intervention. (*Id*. ¶¶ 11-21.)

FIA knowingly used an automatic telephone dialing system to send text messages, without consent, to cellular telephone numbers that were never provided to it by the actual subscribers or customary users of such numbers. (*Id*.) Accordingly, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also repeatedly violated the TCPA. (*Id*.)

**B. Facts Specific to Plaintiff Olmos.**

In 2007 and 2008, Plaintiff Olmos incurred debts on FIA credit cards. (*Id*. ¶ 16.) In July of 2014, Plaintiff got a new cellular telephone number. (*Id*. ¶ 17.) She never gave FIA this number or her prior express consent to call. (*Id*.) Nonetheless, in 2015, FIA sent multiple text messages to Plaintiff's new cellphone number that stated, "Please call FIA Card Services." (*Id*. ¶¶ 18-19.) FIA knowingly sent these text messages without Plaintiff's prior express consent, using an automatic telephone dialing system, to a number that Plaintiff never provided to it, and thus knowingly and repeatedly violated the TCPA. (*Id*. ¶¶ 20-21.)

**C. The Proposed Class.**

As a result of Defendant's conduct described above, Plaintiff Olmos brought this lawsuit and now seeks certification of a Class of similarly situated individuals, defined as follows:[2]

> All persons in the United States who: (1) received a text message sent by or on behalf of Defendant; (2) at his or her cellular telephone number; and (3) where Defendant had no record of prior express consent from such individual to send such message.

As demonstrated below, the proposed Class meets Rule 23's prerequisites, and this motion should be granted.

**III. ARGUMENT**

This Court should certify the proposed Class because it is ascertainable and

---

[2] The following are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

satisfies each of the requirements of Rule 23. Certification is appropriate when a proposed class meets Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy of representation—and satisfies at least one of Rule 23(b)'s subparts. *See* Fed. R. Civ. P. 23(a), (b). Plaintiff seeks certification under Rule 23(b)(2) and 23(b)(3).

In order to certify a class under 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). In order to certify a class under 23(b)(3), the common questions of law or fact must predominate over questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). Indeed, while a court may look behind the pleadings and otherwise consider evidence for purposes of deciding the question of certification itself, "a district court has no authority to conduct a preliminary inquiry into the merits of a suit at class certification unless it is necessary to determine the propriety of certification," as "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id*. (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552, n. 6 (2011)) (internal citations omitted). "Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification was proper." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983, n.8 (9th Cir. 2011).

The proposed Class is ascertainable and satisfies Rule 23's requirements. To protect the rights of those who have no wherewithal, power, knowledge, or practical means of individually adjudicating their claims, the Court should grant Plaintiff's

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
<small>PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION</small>

motion for class certification.

**A.     The Class is Ascertainable because it is Defined by Reference to Objective Criteria.**

As an initial matter "and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Stemple v. QC Holdings, Inc.*, 2014 WL 4409817, at *4 (S.D. Cal. Sept. 5, 2014) (quoting *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D.Cal.2009)). Although the exact identities of the class members need not be specified at the class certification stage, "the proposed class must be sufficiently definite in order to demonstrate that a class actually exists." *Id.* "[A] class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Here, the proposed Class definition is both objective and precise because liability will track FIA's common conduct—*i.e.*, its acquisition of telephone numbers and standardized text messaging—and because membership in the Class turns on objective criteria from FIA's own records—*i.e.*, whether someone (1) received a text message; (2) from FIA; (3) on a cellphone; (4) where FIA had no record of prior express consent to send such message.

These criteria can be readily analyzed entirely from Defendant's own records, which will show what dialing equipment it used, what text messages it sent, and which numbers it contacted. Further, Defendant's records will contain skip-tracing reports and other sources it used to acquire phone numbers, and wherever FIA's records show no indicia of consent and a source for a number other than the person called, FIA lacked prior express consent. Accordingly, as with similar TCPA class actions, the Class is ascertainable. *See, e.g.*, *Stemple*, 2014 WL 4409817, at *4.

**B.     The Class Satisfies Rule 23(a)'s Four Requirements.**

The Class meets Rule 23(a)'s four requirements because it (1) is sufficiently

5

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

numerous, (2) raises common questions of law and fact, (3) features a proposed representative whose claims are typical of each Class member, and (4) is adequately represented by the named Plaintiff and counsel. Fed. R. Civ. P. 23(a). The Class consist of thousands of similarly situated persons whose common experiences relating to FIA's text messages can be uniformly and collectively resolved through a single action. As these common issues directly track Plaintiff Olmos's own facts and claims, her class certification motion should be granted.

> **i. The Class is sufficiently numerous because thousands of individuals nationwide have received Defendant's text messages.**

For a class to be certified, it must satisfy Rule 23's requirement that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). "Whether joinder would be impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). Indeed, plaintiffs "need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous." *Id*. (quoting *Martinez v. Bechtel Corp.*, 10 Empl.Prac.Dec. (CCH) 6351, 6353, 1975 WL 274 (N.D.Cal.1975)). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." *Stemple*, 2014 WL 4409817, at *4 (quoting *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007)).

Here, Plaintiff alleges—and discovery will show—that Defendant has sent text messages to thousands of individuals dispersed across the United States. (Compl. ¶ 23.) *See* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243–46 (4th ed. 2002) ("Class actions under the amended Rule 23 have

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
Plaintiff's Memorandum in Support of Her Motion For Class Certification

frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Accordingly, joinder is impracticable and the numerosity requirement is met.[3]

### ii. Classwide resolution will provide uniform answers to common questions of both law and fact.

Plaintiff seeks common answers to questions of law and fact that will determine Defendant's liability to her as well as every other member of the proposed Class. These common answers turn on the existence and lawfulness of FIA's standardized text messaging practices, and the answers will be the same for all Class members, ensuring that all will enjoy uniform rights to recovery.

Rule 23 requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This rule is "construed permissively." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008). Commonality may be demonstrated when the claims of all class members "depend upon a common contention," and "even a single common question will do." *Dukes*, 131 S.Ct. at 2545, 2556; *see also Parra*, 536 F.3d at 978 ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class").

The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2545. Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality

---

[3]   To the extent the Court requires additional details regarding the number of Class members, such information may be obtained from Defendant's records through discovery.

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

exists." *Parra*, 536 F.3d at 978-79.

Here, the claims of Plaintiff and the Class members are based upon a single common contention: that Defendant violated the TCPA by sending text messages to their cellphone numbers, without consent. (Compl. ¶¶ 11-21, 26.) Defendant sent these text messages systematically, and its conduct affected Plaintiff and the Class members in a virtually identical manner (*i.e.*, subjecting them to the loss of money required to receive such messages, as well as the invasion of their privacy and statutory rights). (*Id.*) Moreover, Defendant's conduct will be proven through common and generalized evidence applicable to the Class as a whole.

Defendant's conduct gives rise to several common questions of law and fact, the answers to which are central to the validity of Plaintiff's and the Class members' claims. Such common questions include (i) whether Defendant systematically sent text messages to persons who did not previously provide it with prior express consent to call; (ii) whether Defendant sent these messages using equipment that constitutes an "automatic telephone dialing system" as that term is contemplated under the TCPA; (iii) whether Defendant's conduct violated the TCPA; and (iv) whether Plaintiff and the Class members are entitled to trebled damages as a result of the knowledge or willfulness of Defendant's conduct.

Regardless of the ultimate outcome on the merits, these common questions— all based on Defendant's standardized course of conduct—will necessarily generate common answers, applicable to the Class as a whole. As such, commonality exists.

### iii. Plaintiff's claims are typical because she has been injured by the same standardized course of conduct as all other Class members— Defendant's unlawful text messaging.

Rule 23(a)(3) provides that a representative party's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under the Rule's permissive standards, the representative claims need only be "reasonably co-extensive" with those of the class—not "substantially identical." *Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D. Cal.1985)). Typicality tends to merge with commonality. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

No unique factual circumstances materially distinguish Plaintiff Olmos's claims from those held by other Class members. Like everyone else included in the definitions of the Class, Plaintiff Olmos received text messages from FIA on her cellphone, all sent without her prior express consent, in violation of the same provisions of the TCPA and entitling her to receive the same calculation of statutory damages as all other Class members. (Compl. ¶¶ 11-21, 24.)

Because Plaintiff Olmos has suffered the same injuries as each Class member, and because these injuries all result from FIA's uniform conduct, her claims will rise or fall in tandem with those of the other Class members. Her claims are typical.

### iv. Plaintiff and her counsel have no conflicts with and are committed to adequately representing the proposed Class.

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether a plaintiff satisfies the adequacy factor, courts ask: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), as amended (2000) (citing *Hanlon*, 150 F.3d at 1020). "[T]he class representative must not have interests antagonistic to the unnamed class members, and [] the representative must be able to prosecute the action vigorously through qualified counsel." *Id*. (citation and quotation omitted). It is persuasive evidence that

proposed class counsel have been found adequate in prior cases. *See id.*

Plaintiff Olmos's interests are aligned with those of the Class and she is committed to prosecuting her claims on a representative basis. Plaintiff Olmos has been an active participant in this case, having already reviewed filings, answered detailed questions, and secured and produced documents for investigation. Like the other members of the Class, her interests lie in ensuring that Defendant's unlawful conduct does not continue in the future and that she and the other members of the Class recover the injunctive and monetary relief to which they are entitled. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. (Compl. ¶¶ 24-25.)

Likewise, Plaintiff's counsel are well-respected members of the legal community who have extensive experience with class actions of similar size, scope, and complexity to the instant action. (*See* Declaration of Benjamin H. Richman ¶¶ 4-5, a true and accurate copy of which is attached hereto as Exhibit 1.) They have regularly engaged in major complex class litigation involving the TCPA and consumer privacy issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.*; see also Firm Resume of Edelson PC, a true and accurate copy of which is attached as Exhibit 1-A to the Richman Declaration.) Proposed class counsel have already diligently investigated the claims at issue in this action and dedicated substantial resources to the case, and they will continue to do so throughout its pendency. (Id. ¶ 6.)

As such, Plaintiff and her counsel have and will continue to adequately represent the Class, and Rule 23's adequacy requirement is met.

### C. The Class Satisfies the Requirements of Rule 23(b)(2) and (b)(3).

In addition to the prerequisites of Rule 23(a), the Class satisfies the prerequisites of Rules 23(b)(2) and (b)(3) as well.

### i. Rule 23(b)(2) is satisfied.

Rule 23(b)(2) provides that the party opposing certification must have "acted or refused to act on grounds generally applicable to the class," thereby making injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2). "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Defendant acted on grounds generally applicable to the Class as a whole. For each Class member, Defendant FIA sent virtually identical unsolicited text messages, all without consent and all in violation of the same provisions of the TCPA. (Compl. ¶¶ 11-21.) Defendant's conduct did not vary significantly from Class member to Class member and therefore, final injunctive relief is appropriate to protect Plaintiff and the other members of the Class from such conduct in the future. Thus, the requirements of Rule 23(b)(2) are satisfied.

### ii. Rule 23(b)(3) is satisfied.

Plaintiff Olmos also seeks certification under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

Where a proposed class meets Rule 23(b)(3)'s requirements, the class action mechanism has a "practical utility . . . achiev[ing] economies of time, effort, and expense." *Murray v. Fin. Visions, Inc.*, No. 07-2578, 2008 WL 4850328 at *4 (D. Ariz. Nov. 7, 2008); *see also* Fed. R. Civ. P. 23(b)(3) advisory committee's note. A

case such as this—where individual recoveries for the Class members would be relatively small and likely not pursued absent classwide litigation—exemplifies the class action's practical utility. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). This Court should therefore find the requirements of Rule 23(b)(3) satisfied.

### 1. Common issues regarding the legality of FIA's text messaging predominate over any individual questions.

The predominance requirement is satisfied because the key questions at issue in this case all stem from FIA's uniform sending of text messages without legal right, ensuring that no uniquely individual concerns are at stake. Although predominance is a more demanding standard than commonality, the predominance requirement is satisfied when a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 622. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Moreover, because "Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . ., a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

Here, Plaintiff has presented a cognizable, unified theory of liability concerning Defendant's standardized sending of unauthorized text messages. (Compl. ¶¶ 11-21.) Specifically, Plaintiff's class-wide liability theory is based on

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

two core elements: whether or not she and the Class received FIA text messages (1) at cellular telephone numbers (2) which FIA placed using an automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Common issues predominate with regard to each aspect of Plaintiff's TCPA claims. For instance, no individual issues will or could arise with regard to the first element—whether the text messages at issue were placed to cellular telephone numbers—because the Class is limited by definition to only those individuals who received messages on their cellphones. Moreover, Defendant's records can be analyzed in an automated fashion (by cross-referencing with commercially available databases) to determine which calls were text messages sent to cellphones and which were not. Likewise, the second central element—whether or not the equipment used by Defendant to send text messages constitutes an automatic telephone dialing system under the TCPA—raises no individual issues because FIA used the same equipment in the same ways for each of the Class members' claims.

Finally, whether Defendant can prove prior express consent to send text messages will be a question common and predominant to all members of the Class. As defined, the Class consists only of those individuals whose account records are free of any indicia of consent. As such, for each Class member, there is "no evidence that [he or she] consented to receive the [text messages]" and FIA will be "unable to realistically argue that individual issues regarding consent outweigh the commonality." *Silbaugh v. Viking Magazine Servs., Inc.*, 278 F.R.D. 389, 394 (N.D. Ohio 2012); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given.").

Accordingly, the Class is narrowly defined to avoid the presence of any individualized issues, and the numerous common issues facing the Class predominate over issues affecting only individual Class members (*e.g.*, the total

number of text messages received by each individual Class member). Moreover, the answers to these questions are subject to common proof, primarily from information to be found within Defendant's own records. *See Dukes*, 131 S. Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). As such, common issues predominate.

### 2. A class action is a superior means of adjudicating this controversy.

The proposed Class also meets Rule 23(b)'s second requirement—that class resolution be "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id*. at 1175. Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Holloway v. Full Spectrum Lending*, No. 06-5975, 2007 WL 7698843 at *9 (C.D. Cal. Jun. 26, 2007) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).

This case is particularly suited for class treatment because the claims of the Plaintiff and the proposed Class involve identical alleged violations of a federal statute, namely the making of unsolicited telephone calls by or on behalf of Defendant, in violation of the TCPA. Requiring multiple individual actions based on this uniform conduct could lead to inconsistent adjudications and would be judicially inefficient. In addition, absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive. Were this case not to

proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress or that Defendant would not return to its unauthorized calling activities. Accordingly, a class action is the superior method of adjudicating this controversy.

## IV.  CONCLUSION

For the foregoing reasons, and for reasons that will be borne out by Class discovery, this case is appropriate for class certification. Accordingly, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that the Court issue an order (i) entering and reserving ruling on this Motion for Class Certification; (ii) allowing for discovery to take place on class-wide issues; (iii) granting Plaintiff leave to file an updated Memorandum of Points and Authorities in support of her Motion for Class Certification upon the conclusion of class-wide discovery; (iv) granting Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and (v) providing all other and further relief that the Court deems equitable and just.[4]

Respectfully submitted,

**TATIANA OLMOS,** individually and on behalf of all others similarly situated,

Dated:  December 11, 2015    By:  s/ Daniel G. Shay
One of Plaintiff's Attorneys

Daniel G. Shay
danielshay@tcpafdcpa.com
LAW OFFICE OF DANIEL G. SHAY
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
Tel: 619.222.7429
Fax: 866.431.3292

---

[4]   Plaintiff respectfully requests the right to amend the definition of the Class, as appropriate, at the conclusion of class-wide discovery.

Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Class

*Olmos, et al. v. FIA Card Services, N.A.*, No. 15-cv-2786
PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION