Daniel G. Shay, CA Bar #250548
danielshay@tcpafdcpa.com
LAW OFFICE OF DANIEL G. SHAY
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
Tel: 619.222.7429
Fax: 866.431.3292

Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
J. Dominick Larry (Admitted *Pro Hac Vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA OLMOS, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff*,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national bank, f/k/a FIA CARD SERVICES, N.A., a national bank,<br><br>       *Defendants*. | Case No. 15-cv-02786-BAS-BGS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BANK OF AMERICA'S MOTION TO DIMSISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hon. Cynthia Bashant<br><br>Magistrate Judge Bernard G. Skomal<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ...................................................................................2

III.  LEGAL STANDARD ...........................................................................3

IV.  ARGUMENT .......................................................................................4

    A.   Olmos sufficiently states a claim for BOA's violations of the TCPA inasmuch as she alleges that she did not consent to receive the messages at issue and that BOA used an ATDS to send them. ..............4

        1.   *Olmos was not required to plead a negative—i.e., her lack of consent—but she did so anyway.* ...................................................4

        2.   *By alleging that BOA repeatedly sent boilerplate text messages to herself and others, Olmos plausibly alleges facts demonstrating BOA's use of an ATDS.* .........................................7

    B.   Olmos states a claim under the Rosenthal Act because she has alleged that BOA sent the messages "in connection with" the collection of a debt. ...................................................................................................10

    C.   Olmos states a claim under both the unlawful and unfair prongs of the UCL. ............................................................................................13

        1.   *Olmos has standing to pursue her UCL claim because the text messages diminished the use, enjoyment, value, and utility of her cellular telephone and cellular telephone plan.* .........................13

        2.   *Olmos states a claim under the UCL's "unlawful" prong because she has plausibly alleged violations of the TCPA and Rosenthal Act.* ...................................................................................16

        3.   *Olmos states a claim under the UCL's "unfair" prong because the text messages violate the policies underlying the TCPA and Rosenthal Act, and the harm they caused outweighs their benefits.* ..................................................................................16

V.    CONCLUSION ..................................................................................19

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 3

**UNITED STATES COURT OF APPEALS CASES**

*Bailey v. Sec. Nat. Servicing Corp.*,
    154 F.3d 384 (7th Cir. 1998) ...................................................... 11

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) .......................................................... 4

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .................................................... 18

*Gburek v. Litton Loan Servicing LP*,
    614 F.3d 380 (7th Cir. 2010) ................................................. 11, 12

*Grant v. Capital Mgmt. Servs., L.P.*,
    449 Fed. App'x 598 (9th Cir. 2011) .............................................. 5

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................. 13, 17

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ................................................... 4, 5

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010) .................................................... 17

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...................................................... 19

*Walcker v. SN Commercial, LLC*,
    286 F. App'x 455 (9th Cir. 2008) ....................................................................11


**UNITED STATES DISTRICT COURT CASES**

*Breidenbach v. Experian*, No. 3:12-CV-1548-GPC-BLM,
    2013 WL 1010565 (S.D. Cal. Mar. 13, 2013) .................................................11

*Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB,
    2015 WL 3398415 (N.D. Cal. May 26, 2015) .................................................14

*Connelly v. Hilton Grand Vacations Co., LLC*, No. 12-cv-599,
    2012 WL 2129364 (S.D. Cal. June 11, 2012) ...................................................5

*Faili v. BAC Home Loans Servicing LP*, No. 8:13-CV-1105-JLS ANX,
    2014 WL 255704 (C.D. Cal. Jan. 23, 2014) .............................................11, 12

*Haghayeghi v. Guess?, Inc.*, No. 14CV00020 JAH-NLS,
    2015 WL 1345302 (S.D. Cal. Mar. 24, 2015) ...........................................7, 8, 9

*Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD,
    2015 WL 1064442 (N.D. Cal. Mar. 11, 2015) ..............................................8, 9

*Hartless v. Clorox Co.*, No. CIV. 06CV2705JAHCAB,
    2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) .............................................16, 18

*Heinrichs v. Wells Fargo Bank, N.A.*,
    2014 WL 985558 (N.D. Cal. Mar. 7, 2014) .......................................................5

*Holt v. Redbox Automated Retail, LLC*, No. 11cv3046 DMS (RBB),
    2014 U.S. Dist. LEXIS 189689 (S.D. Cal. June 20, 2013) ..........................6, 7

*Hutton v. C.B. Accounts, Inc.*, No. 10-3052,
    2010 WL 3021904 (C.D. Ill. Aug. 3, 2010) ...................................................12

*In re Adobe Sys., Inc. Privacy Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ......................................................17, 18

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK,
    2016 WL 589760 (N.D. Cal. Feb. 14, 2016) ..................................................18

*In re Ferrero Litig.*,
    794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..........................................................18

*In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG,
    2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............................................14, 15

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ...........................................................8

*Jenkins v. LL Atlanta, LLC*, No. 1:14-CV-2791-WSD,
    2016 WL 1029524 (N.D. Ga. Mar. 9, 2016) ....................................................9

*Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP,
    2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ...................................................9

*Knutson v. Reply!, Inc.* ("*Knutson II*"), No. 10-CV-1267 BEN,
    2011 WL 1447756 (S.D. Cal. Apr. 13, 2011) ...............................................8, 9

*Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN WMC,
    2011 WL 291076 (S.D. Cal. Jan. 27, 2011) ...................................................10

*Krug v. Focus Receivables Mgmt., LLC*, No. CIV.A.094310JEIAMD,
    2010 WL 1875533 (D.N.J. May 11, 2010) .....................................................12

*Maier v. J.C. Penney Corp.*, No. 13CV0163-IEG DHB,
    2013 WL 3006415 (S.D. Cal. June 13, 2013) ...............................................8, 9

*Mashiri v. Ocwen Loan Servicing, LLC*, No. 3:12-CV-02838-L-MDD,
    2013 WL 5797584 (S.D. Cal. Oct. 28, 2013) ...................................................5

*Pietzak v. Microsoft Corp.*, No. CV 15-5527-R,
    2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ................................................15

*Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG NLS,
    2013 WL 2252646 (S.D. Cal. May 22, 2013) ...................................................5

*Rodriguez v. Fulton Friedman & Gullace, LLP*, No. CIV.A. H-11-4592,
    2012 WL 3756589 (S.D. Tex. Aug. 28, 2012) ................................................12

*Ryabyshchuk v. Citibank (South Dakota) NA*, No. 11-cv-1236,
      2011 WL 5976239 (S.D. Cal. Nov. 28, 2011) ...................................................6

*Smith v. Microsoft Corp.*,
      297 F.R.D. 464 (S.D. Cal. 2014) ..........................................................................6

*Stoba v. Saveology.com, LLC*, No. 13-CV-2925-BAS NLS,
      2014 WL 3573404 (S.D. Cal. July 18, 2014).....................................................15

*Thomas v. Dun & Bradstreet Credibility Corp.*,
      100 F. Supp. 3d 937 (C.D. Cal. 2015).................................................................14

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
      861 F. Supp. 2d 898 (N.D. Ill. 2012) ....................................................................7

*Williams v. T-Mobile USA, Inc.*, No. 15-CV-03384-JSW,
      2015 WL 5962270 (N.D. Cal. Oct. 14, 2015).....................................................10

*Worley v. Mun. Collections of Am., Inc.*, No. 14 C 2418,
      2015 WL 890878 (N.D. Ill. Feb. 27, 2015) ...........................................................7

**STATE SUPREME COURT CASES**

*Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*,
      973 P.2d 527 (Cal. 1999)............................................................................13, 18

*Kasky v. Nike, Inc.*,
      45 P.3d 243 (Cal. 2002).........................................................................................13

*Kwikset Corp. v. Superior Court*,
      246 P.3d 877 (Cal. 2011).......................................................................................14

**STATUTORY PROVISIONS**

47 U.S.C. § 227(a)(1) ..........................................................................................................7

Cal. Bus. & Prof. Code § 17200 ..............................................................................13, 16

Cal. Bus. & Prof. Code § 17204 ........................................................................................13

Cal. Civ. Code § 1788.1(b) ...................................................................... 10, 19

Cal. Civ. Code. § 1788.2(c) .......................................................................... 10

Cal. Civ. Code § 1788.17 ............................................................................. 10

**OTHER AUTHORITIES**

FTC, Text Message Spam, https://www.consumer.ftc.gov/articles/0350-text-
message-spam (last visited Apr. 1, 2016) ....................................... 15

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
Protection Act of 1991*, 23 FCC Rcd. 559 (Jan. 4, 2008) ............................. 5, 6

Plivo, https://www.plivo.com/sms-short-code/ (last visited Apr. 1, 2016) ................ 9

# I.  INTRODUCTION

In 2015, Defendant Bank of America, N.A. ("BOA") sent Plaintiff Tatiana Olmos—and thousands of other consumers—text messages that were designed to appear urgent and call their recipients to action, but in reality, were simply a widespread and unlawful approach to collecting consumer credit card debts. Indeed, Olmos (like many of BOA's other customers) had never even provided her cellular telephone number to BOA, much less given the required prior express consent to be called or messaged at that number. Thus, by sending those text messages, BOA violated three laws: (1) the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), which prohibits anyone from using an automatic telephone dialing system ("ATDS") to call an individual's cellular telephone, unless the caller has the recipient's prior express consent; (2) California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.* (the "Rosenthal Act"), which, among other things, prohibits the use of unfair, unconscionable, unlawful, or harassing methods in connection with debt collection; and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), which prohibits unfair, deceptive, or unlawful acts in commerce, and allows any person who loses money or property as a result to bring suit.

BOA attempts to downplay its violations as "two isolated text messages," (BOA Mem. at 1), but of course, even a single unauthorized message is actionable under these statutes. And in reality, BOA's conduct occurred on a massive scale, with unauthorized messages sent to thousands of individuals throughout the country. Its other, more specific, arguments are also unavailing. First, it contends that Olmos's TCPA claim fails because she did not adequately plead her lack of consent or its use of an ATDS. Second, it argues that her Rosenthal Act claim fails because the messages at issue did not include a demand for payment of a debt. And third, it argues that Olmos's UCL claim fails because she supposedly did not allege injury, or unfair or unlawful conduct as required by the UCL.

As explained more fully below, each of BOA's arguments misreads the actual allegations of Olmos's First Amended Complaint ("FAC"), and misunderstands controlling case law. Accordingly and for the reasons described below, Olmos respectfully requests that the Court deny BOA's motion in its entirety.

## II.    BACKGROUND

As a large national bank, BOA operates millions of consumer credit card accounts throughout the country, many of which are associated with its former subsidiary, FIA Card Services, N.A. (*Id.* ¶¶ 1, 12.) To collect debts on such a broad scale, BOA employs, *inter alia*, a vast telephone calling and text message operation. (*Id.* ¶¶ 2, 12, 40.) As part of that operation and when it needs to obtain new or additional contact information for one of its customers, it uses a method known as "skip tracing" to acquire consumers' cellular telephone numbers without their knowledge or consent, and then includes those consumers on its list of individuals to receive text messages in order to collect on a particular debt. (*Id.* ¶¶ 2, 3, 13.) Olmos alleges further that to expedite the process, BOA uses equipment that has the capacity to store or produce telephone numbers, and dial them *en masse*, without the need for human intervention. (*Id.* ¶ 14, 34.) BOA has knowingly and repeatedly engaged in this practice. (*Id.* ¶¶ 22, 43, 49.)

Olmos is one of thousands of consumers who received text messages from BOA that were designed to appear urgent or otherwise requiring an immediate response in an effort to ensure the recipient would take action. On April 29, 2015, BOA transmitted the following generic text message to Olmos's cellular telephone from a five-digit SMS short code:

> (Free MSG) Please call FIA Card Services regarding a servicing matter at 1-888-795-6262 by 11pm ET today. Reply STOP to end texts.

(*Id.* ¶ 19.) Again, on June 11, 2015, Olmos received another almost identical message demanding a return phone call to a different toll-free number. (*Id.* ¶ 20.) Like the other members of the proposed class and subclass, Olmos never provided

BOA with the cellular telephone number on which she received the text messages or her prior express consent for BOA to send such messages to her. (*Id.* ¶ 18.)

Though the messages provided little information, there was only one possible reason Olmos received them. Like many consumers, Olmos had incurred debts on BOA-issued credit cards, (*id.* ¶ 17), and BOA's calls were an attempt to collect on money owed, (*id.* ¶¶ 40, 41).

BOA's uninvited communications drew the ire of many consumers, who complained online about receiving the same boilerplate text messages, with only the return telephone number varying among them. (*Id.* ¶¶ 15, 21.) The text messages also took a toll on consumers' cellular telephones and cellular telephone plans. Specifically, the unsolicited text messages caused Olmos and the proposed class members to lose money or property "in the form of the wear and tear on their cellular telephone equipment, consumed battery life, and the diminishment in the use, enjoyment, value and utility of their cellular telephone plans," (*id.* ¶ 53), not to mention the type of "aggravation, nuisance, and invasion of privacy," (*id.* ¶ 5), that the TCPA was intended to prevent. These harms outweighed any conceivable benefits the messages could have delivered. (*Id.* ¶ 50).

On December 10, 2015, Olmos filed her original Class Action Complaint, and on February 10, 2016, filed the FAC.

## III. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, a court accepts as true all allegations of material fact and construes them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins.*

*Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

## IV. ARGUMENT

### A. Olmos sufficiently states a claim for BOA's violations of the TCPA inasmuch as she alleges that she did not consent to receive the messages at issue and that BOA used an ATDS to send them.

BOA first asks the Court to dismiss Olmos's TCPA claim because she supposedly failed to plead: (1) lack of consent, and (2) facts suggesting the use of an ATDS. Both arguments must be rejected. The first argument fails because BOA ignores the weight of case law holding that prior express consent is an affirmative defense to—and not a required element of—a TCPA claim. Moreover, BOA overlooks Olmos's express allegation that she never gave BOA "her prior consent" to receive the messages. (FAC ¶ 18.) Similarly, the second argument ignores Olmos's plain allegations regarding the boilerplate form and content of the text messages, as well as other consumers' receipt of the same messages, which support a reasonable inference that BOA used an ATDS to transmit them. As such, BOA's challenges to Olmos's TCPA claims fail.

#### 1. Olmos was not required to plead a negative—i.e., her lack of consent—but she did so anyway.

Relying on a Ninth Circuit case affirming the entry of a preliminary injunction, BOA argues that the absence of prior express consent is an element of Olmos's claim that must be established in the pleadings. (*See* BOA Mem. at 4 (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)). BOA is wrong.

*Meyer* came to the court of appeals after the plaintiff in a putative TCPA class action against a debt collector sought and obtained a preliminary injunction and provisional class certification. 707 F.3d 1036. In assessing the propriety of the injunction, the Ninth Circuit identified the absence of prior express consent as an element for which the plaintiff would have to demonstrate a likelihood of success on

the merits. *Id.* at 1043. Thus, "*Meyer* . . . did not decide whether lack of consent must be affirmatively pled to survive a Rule 12(b)(6) motion." *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 985558, at *3 (N.D. Cal. Mar. 7, 2014). Indeed, as the Ninth Circuit recognized in another (albeit unpublished) opinion, "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof." *See Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. App'x 598, 600 (9th Cir. 2011) (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008)).

Since *Meyer*, courts in the Ninth Circuit have consistently held that a plaintiff need not plead lack of prior express consent to state a claim under the TCPA. *See Heinrichs*, 2014 WL 985558, at *3 (denying motion to dismiss, explaining that complaint "need not allege lack of consent to plead a TCPA claim"); *Mashiri v. Ocwen Loan Servicing, LLC*, No. 3:12-CV-02838-L-MDD, 2013 WL 5797584, at *5 (S.D. Cal. Oct. 28, 2013) (denying motion to dismiss, explaining that because "prior express consent is not an element of a TCPA claim, [p]laintiff was not required to plead that such consent was lacking."); *Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013) (denying motion to dismiss, explaining that TCPA plaintiffs "need only allege two elements: (1) a call to a cellular telephone; (2) via an ATDS."); *see also Connelly v. Hilton Grand Vacations Co., LLC*, No. 12-cv-599, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012) (collecting cases). Indeed, *Meyer* itself indicates that it is the defendant's burden to prove whether consent was given. *See Meyer*, 707 F.3d at 1042 (noting that consent issues did not defeat commonality or typicality where defendant "did not show a single instance where express consent was given before the call was placed"). And the FCC has also recognized that in the debt collection context, the burden is on the creditor—who is in the best position to have any meaningful records—to show that consent was provided. *In the Matter of Rules &*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. at 565; *see also Ryabyshchuk v. Citibank (South Dakota) NA*, No. 11-cv-1236, 2011 WL 5976239, at *5 (S.D. Cal. Nov. 28, 2011) ("[T]he FCC recognized the heavy burden a consumer might face in trying to prove that he *did not* provide prior express consent.") (emphasis in original).

The only cases BOA cites in support of its interpretation of *Meyer* are distinguishable. BOA relies on a footnote in *Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D. Cal. 2014), to support its reading, but both its own brief and the *Smith* footnote ignored *Meyer*'s procedural posture—i.e., that in the context of a motion for preliminary injunction it is plaintiff's obligation to prove a likelihood of success on the merits, which would include overcoming any affirmative defenses (e.g., consent in a TCPA case). *Id.* at 471 n.2. BOA's reliance on *Holt v. Redbox Automated Retail, LLC*, No. 11cv3046 DMS (RBB), 2014 U.S. Dist. LEXIS 189689 (S.D. Cal. June 20, 2013), suffers from the same flaw.

In any event, even if Olmos was required to plead the absence of consent, she did so unambiguously. Specifically, Olmos alleges that in July 2014, she got a new cellular telephone number, and that she "never gave BOA this number or her prior express consent to call it." (FAC ¶ 18.) The allegation that BOA sent the text messages *without consent* is reiterated throughout the complaint. (*Id.* ¶¶ 13, 22, 23, 33, 35.) In response, BOA argues that Olmos alleges only "conclusions and speculation — not fact allegations" regarding her lack of consent, seemingly oblivious to (a) the inherent difficulty in proving a negative, *see Ryabyshchuk*, 2011 WL 5976239, at *5, and (b) the fact that Olmos herself would not need to speculate as to whether *she* provided BOA with prior express consent.

Moreover, Olmos's allegations regarding her lack of consent go above and beyond those that have been recognized as sufficient in cases throughout this District, including the cases relied on by BOA. For instance, in *Holt*, the plaintiffs alleged that they "did not provide Defendant or its agent prior express consent" to

receive the challenged text messages, *Holt v. Redbox Automated Retail LLC*, No. 11cv3046 DMS (RBB), Dkt. No. 36 ¶¶ 21, 31 (S.D. Cal.), and the court found such allegations "sufficient for pleading lack of consent under the TCPA," *Holt*, 2014 U.S. Dist. LEXIS 189689, at *9–10. Here, Olmos alleges not only that she never consented to BOA's messages to her cell phone, but also that BOA's unlawful calls were made to a cellular number she did not even possess when she first entered into a relationship with BOA, and that she never gave that number to BOA. (FAC ¶¶ 17, 18.) Allegations like those have also routinely been found to be more than sufficient to survive a Rule 12(b)(6) motion. *See, e.g.*, *Haghayeghi v. Guess?, Inc.*, No. 14CV00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (finding plaintiff's allegation that she "'did not provide Defendant or its agents prior express consent to receive unsolicited text messages'" sufficient to defeat consent defense at motion to dismiss stage); *Worley v. Mun. Collections of Am., Inc.*, No. 14 C 2418, 2015 WL 890878, at *3 (N.D. Ill. Feb. 27, 2015) (finding plaintiff's allegation "that he did not consent to such calls . . . sufficient to withstand [defendant's] motion to dismiss Plaintiff's TCPA claim"); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012) (denying motion to dismiss "because the four corners of Plaintiff's complaint allege that [defendant] did not have her prior express consent to contact her").

### 2. By alleging that BOA repeatedly sent boilerplate text messages to herself and others, Olmos plausibly alleges facts demonstrating BOA's use of an ATDS.

Olmos has also plausibly alleged the remaining element of her TCPA claim—that BOA used an ATDS to transmit the text messages. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). A plaintiff may plausibly allege the use of an ATDS through either (1) minimal allegations about the equipment used, or (2) more detailed allegations about the "call" itself. *Maier v. J.C. Penney Corp.*, No.

13CV0163-IEG DHB, 2013 WL 3006415, at *3 (S.D. Cal. June 13, 2013) (comparing the two approaches). Under the second approach, facts about the form and content of the text messages, and the manner in which they were sent, can satisfy the ATDS requirement. *Id.* at *3 – 4. For instance, facts showing that the challenged message was generic or impersonal, requested a "YES" response, was sent *en masse*, or was sent from an SMS short code, are all indicative of a message transmitted via an ATDS. *Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, at *3 (N.D. Cal. Mar. 11, 2015); *see also Haghayeghi*, 2015 WL 1345302, at *3 (holding that use of ATDS could be inferred from facts showing that defendant sent generic, impersonal advertising messages via SMS short code). Mindful of the "the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery," courts frequently rely on such details to infer the use of an ATDS. *Harnish*, 2015 WL 1064442, at *3 (quoting *Knutson v. Reply!, Inc.* ("*Knutson II*"), No. 10-CV-1267 BEN, 2011 WL 1447756, at *1 (S.D. Cal. Apr. 13, 2011)) (internal quotations omitted).

Under either approach, Olmos has plausibly alleged that BOA used an ATDS to send the text messages at issue. The FAC alleges that BOA transmits the texts "using equipment that has the capacity to store or produce telephone numbers, and to dial such numbers, *en masse*, without any need for human intervention." (FAC ¶ 14.) While those allegations are sufficient standing alone, *see, e.g.*, *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012), additional facts bolster Olmos's claim. First, the FAC recites each message in full and describes their generic content. (FAC ¶¶ 19, 20.) Indeed, Olmos received the same impersonal message twice. (*Id.*) Second, online complaints regarding the same boilerplate message suggest that the messages were transmitted *en masse*. (*Id.* ¶¶ 15, 21.) Third, the messages were transmitted via the SMS short code "345-22." (*Id.* ¶¶ 19, 20.) Such codes are typically used to transmit a high volume of impersonal messages to a large swath of recipients, *see, e.g.*, Plivo, https://www.plivo.com/sms-

short-code/ (last visited Apr. 1, 2016) (noting that "SMSes are sent out at a default base rate of 40 per second," with higher transmission rates available); *Jenkins v. LL Atlanta, LLC*, No. 1:14-CV-2791-WSD, 2016 WL 1029524, at *4 (N.D. Ga. Mar. 9, 2016) (noting that companies use short codes "to communicate with large numbers of consumers"), and are often indicative of an ATDS, *see, e.g.*, *Haghayeghi*, 2015 WL 1345302, at *4 (alleged use of short code supported inference of ATDS, even though complaint did not supply exact short code number). Construing the facts in the light most favorable to Olmos, as the Court must, the FAC supports the reasonable inference that an ATDS was used. *See Harnish*, 2015 WL 1064442, at *3 (plaintiff plausibly alleged ATDS by including "the short code from which the message was transmitted, and the content of the message"); *Maier*, 2013 WL 3006415, at *4 (plaintiff plausibly alleged ATDS by describing "the specific content of the text message and the number from which it was received"); *Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) ("[The] description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS.").

In support of its argument that Olmos has not adequately alleged the use of an ATDS, BOA relies on two cases that expressly lacked any contextual facts regarding ATDS usage. (BOA Mem. 5.) For instance, in *Knutson*, the plaintiff stated that calls received "were solicitations about Defendant's real estate business," but the complaint contained no facts "allow[ing] the court to infer the calls were randomly generated or impersonal."[1] *Knutson v. Reply!, Inc.*, No. 10-CV-1267 BEN WMC, 2011 WL 291076, at *2 (S.D. Cal. Jan. 27, 2011). Similarly, in *Williams*, the plaintiff vaguely alleged that the "frequency and pattern" of the calls suggested that

---

[1] When the plaintiff amended his complaint with additional factual allegations—that a particular phone number displayed when he received calls, and that no one responded when he asked who was calling—the court denied defendant's subsequent motion to dismiss. *Knutson II*, 2011 WL 1447756, at *1.

an ATDS was used, but provided no other facts—such as those about the content of the message or the use of an SMS short code—that would make her claim plausible. *Williams v. T-Mobile USA, Inc.*, No. 15-CV-03384-JSW, 2015 WL 5962270, at *3 (N.D. Cal. Oct. 14, 2015).

Ultimately, because Olmos has alleged that she "never gave BOA . . . her prior consent" to call her cellular telephone number, (FAC ¶ 18), and has included facts that make plausible her allegation that BOA used an ATDS, both of BOA's arguments fall flat, and its motion to dismiss Olmos's TCPA claim must be denied.

### B. Olmos states a claim under the Rosenthal Act because she has alleged that BOA sent the messages "in connection with" the collection of a debt.

In addition to her claim under the TCPA, Olmos also sufficiently alleges that BOA violated California's Rosenthal Act by sending illegal and harassing text messages, and therefore employing unfair and unconscionable means to collect on consumer debts. (FAC ¶¶ 38 – 45.) California enacted the Rosenthal Act "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). The Rosenthal Act requires "every debt collector collecting or attempting to collect a consumer debt," to comply with §§ 1692b–1692j of the federal Fair Debt Collection Practices Act ("FDCPA"), which it incorporates by reference. *Id.* § 1788.17. The Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code. § 1788.2(c). Thus, unlike the FDCPA, the Rosenthal Act encompasses creditors attempting to collect on *their own* debts, as BOA is alleged to have done here. *Breidenbach v. Experian*, No. 3:12-CV-1548-GPC-BLM, 2013 WL 1010565, at *4 (S.D. Cal. Mar. 13, 2013). Accordingly, BOA's text messages, demanding a prompt return phone call regarding a "servicing matter," fall within the scope of the

Rosenthal Act because they were sent "in connection with" the collection of a debt.

BOA argues that the FDCPA (and with it, the Rosenthal Act) does not apply to its text messages to Olmos because "communications do not fall under the FDCPA where no demand for payment is made." (BOA Mem. at 7.) Essentially, BOA asks this Court to adopt a bright line rule that *no communication*, regardless of form, is "in connection with the collection of any debt" unless it includes a demand for payment. (*Id.* at 6.) BOA's position is flawed; whether a communication is made "in connection with the collection of any debt" may not only be determined by its content (which could include a demand for payment), but from its context as well.

BOA relies on *Walcker v. SN Commercial, LLC*, 286 F. App'x 455, 456 (9th Cir. 2008), where the Ninth Circuit determined that because a loan servicer's letters were informational, "not demands for payment," they were not communications made in connection with "the collection of a claim" under Washington state law. *Walcker*, 286 F. App'x at 457. *Walcker* drew on the reasoning of *Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998), in which the Seventh Circuit observed that a loan servicer's letters containing upcoming payment dates and other information were unlike a typical dunning letter demanding payment, and concluded they were not sent in connection with the collection of a debt. *Bailey*, 154 F.3d at 388–89. Since then, however, the Seventh Circuit has made clear that *Bailey* "does not . . . establish a categorical rule that only an explicit demand for payment will qualify as a communication made in connection with the collection of a debt." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010). Rather, the absence of a payment demand is just one factor in the court's analysis, which also examines the nature of the parties' relationship and the purpose and context of the communication. *Id.*; *accord Faili v. BAC Home Loans Servicing LP*, No. 8:13-CV-1105-JLS ANX, 2014 WL 255704, at *15 (C.D. Cal. Jan. 23, 2014) (recognizing demand for payment is not required, and declining to dismiss FDCPA claim).

Here, Olmos alleges facts showing that BOA's text messages were sent in

connection with the collection of a debt. She alleges that she "incurred debts on BOA credit cards in 2007 and 2008." (FAC ¶ 17.) She further alleges that BOA is a debt collector "who regularly engages in acts or practices in connection with the collection of consumer debts." (*Id.* ¶ 40.) And she does not allege any reason beyond the debt for BOA to contact her "about a servicing matter," nor does BOA argue that one exists. (FAC ¶¶ 19, 20.) It is apparent from the face of the FAC, therefore, that BOA's text messages to Olmos—demanding a prompt call "regarding a servicing matter," (*id.* ¶¶ 19, 20)—were "in connection with" the collection of her credit card debts. *See, e.g.*, *Rodriguez v. Fulton Friedman & Gullace, LLP*, No. CIV.A. H-11-4592, 2012 WL 3756589, at *7 (S.D. Tex. Aug. 28, 2012) (agreeing with "majority of district courts" that communications include "even those voice mail messages that simply request that the consumer return the debt collector's call" and collecting cases); *see also Hutton v. C.B. Accounts, Inc.*, No. 10-3052, 2010 WL 3021904, at *3 (C.D. Ill. Aug. 3, 2010) (holding that because "the only reason that Defendant called Plaintiff was to attempt to collect on her outstanding debt," the communication was made in connection with the collection of a debt); *see also Krug v. Focus Receivables Mgmt., LLC*, No. CIV.A.094310JEIAMD, 2010 WL 1875533, at *2 (D.N.J. May 11, 2010).

At this stage of the litigation, then, Olmos's allegations that she incurred credit card debts owed to BOA, and that BOA sent her text messages urgently requesting that she call back regarding "a servicing matter," are more than sufficient to establish that BOA sent its text messages in connection with the collection of a debt. *See Gburek*, 614 F.3d at 385 (noting that whether communication was actually sent in connection with a collection attempt is a question of fact); *see also Faili*, 2014 WL 255704, at *15 (explaining that "purpose and context of the communications . . . cannot always be determined at the motion to dismiss stage").

### C. Olmos states a claim under both the unlawful and unfair prongs of the UCL.

In addition to her TCPA and Rosenthal Act claims, Olmos seeks relief under the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* The purpose of the UCL is "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002). To that end, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," Cal. Bus. & Prof. Code § 17200, with the "unlawful" and "unfair" prong each providing a separate theory of liability. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (quoting *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999)) (internal quotations omitted).

BOA raises three challenges to Olmos's UCL claims. First, BOA asserts that Olmos lacks standing to sue under the UCL, as she has supposedly not "lost money or property" as a result of BOA's conduct. (BOA Mem. at 8.) Second, it argues that Olmos did not plead a violation of the UCL's "unlawful" prong. (*Id.* at 9.) And third, that Olmos did not plead a violation of the UCL's "unfair" prong. (*Id.* at 10.) As shown below, each of BOA's challenges are mistaken.

#### 1. Olmos has standing to pursue her UCL claim because the text messages diminished the use, enjoyment, value, and utility of her cellular telephone and cellular telephone plan.

To assert a UCL claim, a private plaintiff must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. A plaintiff has standing when she is able to demonstrate (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e.,

*economic injury*," and (2) causation. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). BOA only challenges whether Olmos has established an economic injury.

To show economic injury, a plaintiff may "have a present or future property interest diminished," or "be deprived of money or property to which he or she has a cognizable claim." *Id.* at 885 – 86. The amount of economic loss needed to show standing "is only so much as would suffice to establish injury in fact," and a "specific, identifiable trifle of injury" will do. *Id.* at 886;[2] *see, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *7 (N.D. Cal. Dec. 3, 2013) (lost battery life and bandwidth consumption constituted economic injury); *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 947 (C.D. Cal. 2015) (depletion of cell phone minutes constituted economic injury). Economic injury often involves "a loss by the plaintiff without any corresponding gain by the defendant, such as, for example, a diminishment in the value of some asset a plaintiff possesses." *Kwikset*, 246 P.3d. at 895.

Here, Olmos alleges that the text messages diminished her and the proposed class members' property interests by causing "wear and tear on their cellular telephone equipment, consumed battery life, and the diminished use, enjoyment, value, and utility of their cellular telephone plans." (FAC ¶ 53.) When a consumer is interrupted with unsolicited text messages, her cellular telephone plan becomes less valuable than one in which service goes undisturbed. *See* FTC, Text Message Spam,

---

[2] The requirements for UCL standing were tightened in 2004 to prevent abuse by plaintiffs who had not actually "used the defendant's product or service, viewed the defendant's advertising, or had any other business dealings with the dealings with the defendant." *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-03082-LB, 2015 WL 3398415, at *5 (N.D. Cal. May 26, 2015) (citation and internal quotations omitted). However, the changes "just as plainly preserved standing" for those—like Olmos—"who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices." *Id.* (citation and internal quotations omitted).

https://www.consumer.ftc.gov/articles/0350-text-message-spam (last visited Apr. 1, 2016) (noting that unsolicited text messages "can lead to unwanted charges on your cell phone bill" and "slow cell phone performance"). And unsolicited text messages can also diminish a cellular telephone's battery life, (FAC ¶¶ 24, 50, 53), which only has a limited number of recharge cycles. While discovery will bear out the exact amount of value lost, Olmos's allegations of economic injury are sufficient to give her standing. *See In re Google*, 2013 WL 6248499, at *7 (noting that "unauthorized use of system resources can suffice to establish a cognizable injury" and collecting cases).

BOA raises two challenges to Olmos's claims of injury. First, that the allegations in the FAC contradict any claim of economic harm, and second, that her allegations are too generalized and conclusory to survive a Rule 12(b)(6) motion. (BOA Mem. at 8 – 9.) BOA is wrong on both fronts. As to the first, BOA's assertion that "Plaintiff admits that the texts she allegedly received were 'free,'" (BOA Mem. at 8), is either a gross misunderstanding or a gross misrepresentation of the plain allegations in the FAC. As it makes clear, while each text message claimed to be a "(Free MSG)," Olmos herself *never* alleged that the messages were in fact free. (FAC ¶¶ 19 – 20.) To the contrary, Olmos repeatedly alleged that the receipt of each supposedly "Free MSG" cost her money and property. (*Id.* ¶¶ 24, 53.)

Second, while BOA claims Olmos's allegations are too generalized to establish UCL standing, the cases BOA relies on are wholly distinguishable, as each describes non-economic injuries based on the violation of a statutory right or intangible emotional harm. *See Stoba v. Saveology.com, LLC*, No. 13-CV-2925-BAS NLS, 2014 WL 3573404, at *4–5 (S.D. Cal. July 18, 2014) (violation of "statutory right of privacy" insufficient to confer standing); *Pietzak v. Microsoft Corp.*, No. CV 15-5527-R, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015) ("embarrassment and emotional harm" insufficient to confer standing). Because Olmos, by contrast, alleges specific and concrete economic injury—that the receipt

of the messages diminished her phone's battery life, caused wear and tear to her cellular telephone, and reduced the utility of the cellular phone and plan she had paid for (FAC ¶¶ 24, 53)—she has "lost money or property," and therefore has standing to sue under the UCL.

### 2. Olmos states a claim under the UCL's "unlawful" prong because she has plausibly alleged violations of the TCPA and Rosenthal Act.

Olmos's TCPA and Rosenthal Act claims form the predicate violations necessary to state a claim under the UCL's "unlawful" prong. This prong of the UCL treats violations of other laws as "unlawful practices that are independently actionable." *Hartless v. Clorox Co.*, No. CIV. 06CV2705JAHCAB, 2007 WL 3245260, at *3 (S.D. Cal. Nov. 2, 2007). "The unlawful practices prohibited by the UCL are any practices forbidden by law, be it civil or criminal, federal, state or municipal, statutory, regulatory or court-made." *Id.* As described above, Olmos has stated a claim under the TCPA because she has plausibly alleged that BOA used an ATDS, and contrary to BOA's assertion, she never gave BOA her new cellular telephone number "or her prior express consent to call it." (FAC ¶ 18.) Olmos has also stated a claim under the Rosenthal Act by including facts to show that the text messages were sent "in connection with" the debts she owed on her BOA credit cards. Having alleged these predicate violations under federal and state law, Olmos has adequately pleaded that BOA's conduct was unlawful under the UCL.

### 3. Olmos states a claim under the UCL's "unfair" prong because the text messages violate the policies underlying the TCPA and Rosenthal Act, and the harm they caused outweighs their benefits.

In addition to prohibiting unlawful conduct, the UCL also prohibits the use of any business practice that is "unfair." *See* Cal. Bus. & Prof. Code § 17200. Unfairness is an "intentionally broad" standard under the UCL, and "a practice may be deemed unfair even if not specifically proscribed by some other law." *In re First*

*All.*, 471 F.3d at 995 (citation and internal quotations omitted). California courts have developed two tests for unfairness, and BOA's unlawful text messages satisfy either test. The first test, known as the balancing test, "examines whether the challenged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014) (citation and internal quotations omitted). Some courts forego an examination of the challenged business practice's immoral or unethical nature and only balance harm and utility. *See, e.g.*, *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *see also In re Adobe*, 66 F. Supp. 3d at 1226 n.12.

The FAC details how BOA's business practices run afoul of state and federal law, and how the text messages invade consumers' privacy. No further allegations are needed to show that this conduct is "unscrupulous." Olmos has also alleged that the injuries to her and other consumers—the diminished use, enjoyment, value, and utility of their cellular telephones and cellular telephone plans—are not outweighed by the text messages' utility. (FAC ¶¶ 50, 53). Such allegations are sufficient to survive a motion to dismiss.

While BOA repeats its misstatement that Olmos alleges the messages were "free," (BOA Mem. at 11), that argument grossly misreads the FAC, as stated above. Likewise for BOA's bizarre assertion that Olmos's failure to inform BOA that she didn't consent to the messages is somehow fatal to her claim. (*See* BOA Mem. at 11.) Neither the UCL nor the TCPA impose any such notification requirement on Olmos. Finally, BOA also urges court to conclude that "there are clear benefits to customers receiving free text messages," (*id.*), but it provides *no* support for that statement. And even if it had provided some support, that argument presents a factual dispute inappropriate for resolution on a motion to dismiss. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 589760, at

*22 (N.D. Cal. Feb. 14, 2016) ("Whether Defendants' public policy violation is outweighed by the utility of their conduct under the balancing test is a question to be resolved at a later stage in this litigation."); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011) (noting that question of unfairness cannot be resolved on demurrer). Thus, because Olmos has alleged injuries to herself and the other recipients of BOA's unlawful text messages, and that those messages provided no countervailing benefit, her FAC satisfies the "balancing test" for unfair-prong claims under the UCL.

The second test, known as the tethering test, is met when "the public policy which is a predicate to a consumer unfair competition action . . . [is] tethered to specific constitutional, statutory, or regulatory provisions." *In re Adobe*, 66 F. Supp. 3d at 1226. A plaintiff need not plead an actual statutory violation, but must show that the effects of the unfair conduct "are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition." *Id.* at 1227 (quoting *Cel-Tech*, 973 P.2d at 544) (internal quotations omitted). Although courts are divided as to whether the tethering test applies to consumer actions, or whether it is only applicable in actions between direct competitors, *see Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012), the standard is satisfied here.

Like her "unlawful" claim, Olmos's "unfair" claim is also based on BOA's alleged violation of the TCPA and Rosenthal Act. As such, it is necessarily "tethered" to these statutes and their underlying policies. *See, e.g. Hartless*, 2007 WL 3245260, at *7 (finding unfairness claim "adequately tethered" to statutory violation where UCL claim was based on violation of federal law). The FAC states that BOA's conduct resulted in "aggravation, nuisance, and invasion of privacy" and weakened consumers' control "over how and where they received texts," violating the "spirit and the letter of the TCPA." (FAC ¶¶ 5, 16) It further states that BOA violated the Rosenthal Act by "sending illegal and harassing text messages to collect on debts." (*Id.* ¶ 42.) These allegations securely tether Olmos's "unfair" claim to the

policies underlying both statutes. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that in enacting TCPA, "Congress was trying to prohibit the use of ATDS to communicate with others by telephone in a manner that would be an invasion of privacy"); Cal. Civ. Code § 1788.1(b) (recognizing "need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other.").

The text messages diminished the value of Olmos's cellular telephone and cellular telephone plan, giving her standing to sue under the UCL. Because Olmos has alleged that BOA's conduct was both unlawful and unfair, BOA's motion to dismiss her UCL claim must be denied as well.

## V. CONCLUSION

For the reasons stated above, Olmos respectfully requests that this Court deny BOA's Motion to Dismiss Plaintiff's First Amended Complaint in its entirety, or in the alternative, grant Olmos leave to amend.[3]

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>**TATIANA OLMOS**, individually and on behalf of all others similarly situated,</td></tr>
<tr><td>Dated: April 4, 2016</td><td>By: s/ Benjamin H. Richman<br>One of Plaintiff's Attorneys</td></tr>
<tr><td></td><td>Daniel G. Shay, CA Bar #250548<br>danielshay@tcpafdcpa.com<br>LAW OFFICE OF DANIEL G. SHAY<br>409 Camino Del Rio South, Suite 101B<br>San Diego, California 92108<br>Tel: 619.222.7429<br>Fax: 866.431.3292</td></tr>
</table>

---

[3] In the event that the Court grants BOA's motion to dismiss (partially or otherwise), Olmos respectfully requests that the Court grant her leave to add further detail or otherwise take the necessary steps to cure any defects found by the Court in her pleadings.

Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admitted *Pro hac vice*.

*Counsel for Plaintiff and the Class and Subclass.*

**CERTIFICATE OF SERVICE**

I, Benjamin H. Richman, an attorney, certify that on April 4, 2016, I served the above and foregoing ***Plaintiff's Response in Opposition to Defendant Bank of America's Motion to Dismiss Plaintiff's First Amended Complaint*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF filing system.

<u>s/ Benjamin H. Richman</u>