TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000

JESSICA ANNE ROBERTS (CA SBN 265570)
JRoberts@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: 858.720.5100

Attorneys for Defendant
BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA OLMOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national bank, f/k/a FIA CARD SERVICES, N.A.,<br><br>Defendant. | Case No. 3:15-cv-02786-BAS-BGS<br><br>**BANK OF AMERICA'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:  April 18, 2016<br>Ctrm:  4B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

                                                                                        **Page**

TABLE OF AUTHORITIES ..................................................................................ii

I.      INTRODUCTION ...............................................................................1

II.     ARGUMENT......................................................................................2

        A.      Plaintiff Has Not Stated a TCPA Claim ..................................2

                1.      Plaintiff's Bare Bones Assertion that BOA Used an
                        ATDS Is Insufficient................................................2

                2.      Plaintiff Failed to Allege Lack of Prior Consent ......4

        B.      Plaintiff Cannot Identify Any "Debt Collection" Activities ...............5

        C.      Plaintiff's Derivative UCL Claim Fails....................................7

                1.      Plaintiff Lacks Standing to Assert a UCL Claim. ......7

                2.      Plaintiff Cannot State a Claim Under the "Unlawful" or
                        "Unfair" Prongs of the UCL........................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AtPac, Inc. v. Aptitude Solutions, Inc.*,
   730 F.Supp.2d 1174 (E.D. Cal. 2010) ...............................................................9

*Capron v. JPMorgan Chase Bank*,
   No. 12CV3059 JLS (RBB), 2013 WL 3520435 (S.D. Cal. July 10, 2013) .........6

*Casualt v. Fannie Mae*,
   915 F. Supp. 2d 1113 (C.D. Cal. 2012) ............................................................6

*Del Vecchio v. Amazon*,
   No. C11–366–RSL, 2011 WL 6325910 (W.D.Wash. Dec. 1, 2011)...................9

*Duguid v. Facebook, Inc.*,
   No. 15-cv-00985-JST, 2016 WL 1169365 (N.D. Cal. March 24, 2016) .............4

*Ebner v. Fresh, Inc.*,
   No. 13-56644, 2016 WL 1056088 (9th Cir. Mar. 17, 2016) ........................ 8, 10

*Flores v. Adir Int'l, LLC*,
   No. CV 15-00076-AB, 2015 WL 4340020 (C.D. Cal. July 15, 2015) .......passim

*Freidman v. Massage Envy Franchising, LLC*,
   No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. June 13, 2013) ........3

*Haghayeghi v. Guess?, Inc.*,
   No.14CV00020 JAH-NLS, 2015 WL 1345302 (S.D. Cal. Mar. 24, 2015) .........3

*Harnish v. Frankly Co.*,
   No. 5:14-CV-02321-EJD, 2015 WL 1064442 (N.D. Cal. Mar. 11, 2015)...2, 3, 5

*Hernandez v. Path, Inc.*,
   Case No. 12–CV–01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19,
   2012)..................................................................................................................8

*Hutton v. C.B. Accounts, Inc.*
   No. 10-3052, 2010 WL 3021904 (C.D. Ill. Aug. 3, 2010) .................................6

BOA'S REPLY ISO MOTION TO DISMISS
Case No. 3:15-cv-02786-BAS-BGS

*In re Google, Inc. Privacy Policy Litig.*,
    No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........ 7, 8, 10

*In re iPhone Application Litig.*,
    844 F.Supp.2d 1040 (N.D. Cal. 2012) ....................................................................7

*Kazemi v. Payless Shoesource Inc.*,
    No. C 09-5142 MHP, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ..................3

*Koby v. ARS Nat'l Servs., Inc.*,
    09cv0780 JAH (JMA), 2010 WL 5249834 (S.D. Cal. Dec. 23, 2010) ...............6

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256-GW(JCGx),  2011 WL 1661532  (C.D. Cal. Apr. 28,
    2011).................................................................................................................8

*Maier v. J.C. Penney Corp.*,
    No. 13CV0163-IEG (DHB), 2013 WL 3006415 (S.D. Cal. June 13, 2013) .......3

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ........................................................................4

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) .............................................................8

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ...........................................................10

*Perez v. Bayview Loan Servicing, LLC*,
    No. 15-cv-02196-RS, 2016 WL 1242755 (N.D. Cal. Feb. 2, 2016)...................4

*Pietzak v. Microsoft Corp.*,
    No. CV 15-5527-R, 2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ...................9

*Sanchez v. United States Bancorp*,
    09-CV-00718-IEG (JMA), 2009 WL 3157486 (S.D. Cal. Sept. 25, 2009) .........6

*Sepehry-Fard v. MB Fin. Servs.*,
    No. 13-cv-02784-BLF, 2014 WL 2191994 (N.D. Cal. May 23, 2014) ......passim

BOA'S REPLY ISO MOTION TO DISMISS
Case No. 3:15-cv-02786-BAS-BGS

*Thomas v. Dun & Bradstreet Credibility Corp.*,
  100 F. Supp. 3d 937 (C.D. Cal. 2015) ...............................................................8

*Williams v. T-Mobile USA, Inc.*,
  No. 15-cv-03384-JSW, 2015 WL 5962270 (N.D. Cal. Oct. 14, 2015) ...........4, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

In her Opposition, Plaintiff highlights conclusory allegations devoid of any supporting facts and insists she has done enough to justify imposing the significant burden of litigation on this Court and on Defendant, BOA. She is wrong.

Plaintiff has not satisfied the requirements for pleading a TCPA claim. Contrary to Plaintiff's assertions, she cannot meet her pleading burden by parroting that statute's language. Plaintiff's reliance on cases that analyzed impersonal marketing messages to strangers is misplaced here, where Plaintiff alleges she received two specific text messages regarding a "servicing matter" from a company with which she admits to having a relationship. Additionally, Plaintiff's attempt to avoid binding Ninth Circuit precedent by reliance on an older, unpublished Ninth Circuit decision and older district court cases is unpersuasive. And despite Plaintiff's insistence that she need not allege lack of consent, she made a cursory attempt to do so. But her conclusory allegation is insufficient.

Plaintiff's Rosenthal Act claim also fails. Plaintiff insists that the Court must make the unreasonable assumption that a "servicing matter" *must* constitute a communication demanding payment for a debt. There are absolutely no factual allegations to support this extraordinary leap. Plaintiff does not even allege that she defaulted on her loan or that she called the number in the text message and BOA thereafter "demanded" payment. Many issues unrelated to "demands" for payment can arise in connection with a credit card account, including information related to fraudulent activity or reports on loan balances. A text about a "servicing matter" simply is not a "demand" for payment in connection with the collection of a debt.

Plaintiff's UCL claim must fall with the failed derivative claims. The UCL claim also independently fails because Plaintiff cannot plausibly allege any "lost money or property" resulting from receiving two free text messages. Although Plaintiff conclusorily states that she lost "money or property," she does not allege how much she paid in unexpected charges, how the battery life on her phone was

1

reduced by receiving two text messages, or how the two texts caused "wear and tear" on her phone. The single sentence Plaintiff repeatedly recites to supposedly allege "lost money or property" cannot meet the *Iqbal/Twombly* tests of plausibility.

Plaintiff's FAC should be dismissed in its entirety.

## II.    ARGUMENT

### A.    Plaintiff Has Not Stated a TCPA Claim.

Plaintiff's TCPA claim fails because she does not sufficiently allege the required elements of (1) use of an ATDS; and (2) lack of prior express consent. *See Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, *2 (N.D. Cal. Mar. 11, 2015).

#### 1.    Plaintiff's Bare Bones Assertion that BOA Used an ATDS Is Insufficient.

Plaintiff argues that the FAC (1) recites the statutory language required of a TCPA claim, and (2) alleges the content of the messages to Plaintiff's cellular phone from a five-digit SMS short code. (Opp. at 2-3, 8.) These scant allegations cannot save Plaintiff's TCPA claim. The "quoted content" relays an urgent need to speak with *Plaintiff*, and it "is not in the nature of an impersonal advertisement." *See Sepehry-Fard v. MB Fin. Servs.*, No. 13-cv-02784-BLF, 2014 WL 2191994, *2 (N.D. Cal. May 23, 2014) (dismissing TCPA claim). The FAC actually "supports the inference that Defendant expressly targeted Plaintiff" and weighs "*against* an inference that Defendant used an ATDS." *Flores v. Adir Int'l, LLC*, No. CV 15-00076-AB (PLAx), 2015 WL 4340020, *5 (C.D. Cal. July 15, 2015) (dismissing claim where allegedly generic messages were sent for debt collecting purposes).

Plaintiff's allegations that "BOA sends these texts 'using equipment that has the capacity to store or produce telephone numbers, and to dial such numbers, *en masse*, without any need for human intervention" (FAC ¶ 14), amount to "nothing more than a 'formulaic recitation of the elements,'" and merely "assert a speculation." *Freidman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-

BOA'S REPLY ISO MOTION TO DISMISS
Case No. 3:15-cv-02786-BAS-BGS

sd-679591

RBB, 2013 WL 3026641, *2 (S.D. Cal. June 13, 2013) (allegations that generic messages "were placed via an [ATDS] as defined by" the statute failed to meet the *Iqbal/Twombly* standard). Similarly, the *Flores* court found allegations that "Defendant used an [ATDS], as defined by" the statute were a "formulaic recitation of the elements" that would "not do." 2015 WL 4340020 at *3. Although Flores (like Olmos) made allegations about the content of the messages, the court found these allegations *weakened* plaintiff's arguments. *Id.* at *4. The same is true here.

The facts alleged here *undermine* the plausibility that the text messages were sent by an ATDS because they demonstrate that the messages were *not* randomly generated. In *Flores*, the plaintiff argued that the use of an ATDS was factually supported because "1) none of the text messages mention Plaintiff directly and appear to be scripted and generic; 2) the text messages confirming Plaintiff's 'Stop' request came almost immediately after Plaintiff's 'Stop' texts, and were generic in that they once again did not make any reference to Plaintiff specifically." *Id.* The court recognized that some automation may be inferred, but found that plaintiff's own allegations regarding debt collection suggested "direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS." *Id.* at *4. The court distinguished cases where "a plaintiff alleged the defendant sent a text message using an SMS short code, sent a text message containing 'impersonal' language, or both" because those other cases involved promotional texts suggesting a level of random targeting. *Id.* at 5.[1]

Other courts agree that the alleged use of an ATDS is undermined by

---

[1] All of the cases cited in Plaintiff's Opposition to support her ATDS allegations are similarly inapposite because they involved alleged promotional texts. *See Maier v. J.C. Penney Corp.*, No. 13CV0163-IEG (DHB), 2013 WL 3006415, at *3 (S.D. Cal. June 13, 2013) (text message offering recipient "best prices"); *Harnish*, 2015 WL 1064442 at *3 (messages were type of "bulk marketing"); *Haghayeghi v. Guess?, Inc.*, No.14CV00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (message from Guess!); *Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (text messages advertising Payless sales).

sd-679591

allegations that there was a purpose for contacting the specific plaintiff. *See, e.g.*, *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, *5 (N.D. Cal. March 24, 2016) (short code text messages did not suggest use of an ATDS when triggered by account login attempts); *Williams v. T-Mobile USA, Inc.*, No. 15-cv-03384-JSW, 2015 WL 5962270, *2 (N.D. Cal. Oct. 14, 2015) (allegations suggesting that defendant intended to call plaintiff undermined the ATDS allegations); *Sepehry-Fard*, 2014 WL 2191994 at *3 (messages such as, "we need to speak with you urgently," supported inference that "Plaintiff received a customer specific call through human agency.")

Here Plaintiff admits that (1) she had credit cards with BOA (FAC ¶ 17); (2) BOA services credit card accounts for its customers (*id.* ¶ 12); (3) BOA sends texts messages to its customers (*id.*); and (4) BOA's message to Plaintiff was "regarding a servicing matter" (*id.* ¶¶ 19, 20). Regardless of the "servicing matter" behind the communication with its customer, Plaintiff's allegations demonstrate that BOA did ***not*** randomly contact her through an ATDS—rather they show BOA intended to contact *her* for a specific reason. Plaintiff's fact allegations directly undermine her recitation of the statutory language. She has failed to allege ***fact*** allegations that plausibly show an ATDS was used.

### 2. Plaintiff Failed to Allege Lack of Prior Consent.

In 2012, the Ninth Circuit expressly stated that prior express consent is an element of a TCPA claim. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012). Relying on an *earlier*, *unpublished* Ninth Circuit case and a handful of district court cases—most of which are from 2012 and 2013—Plaintiff claims that "courts in the Ninth Circuit have consistently held that a plaintiff need not plead lack of prior express consent to state a claim under the TCPA." (Opp. at 5.) Not so. Recent cases routinely identify the absence of consent as an element required to state a TCPA claim. *See Duguid*, 2016 WL 1169365 at *4; *Perez v. Bayview Loan Servicing, LLC*, No. 15-cv-02196-RS, 2016 WL 1242755, *4 (N.D.

BOA'S REPLY ISO MOTION TO DISMISS
Case No. 3:15-cv-02786-BAS-BGS

sd-679591

Cal. Feb. 2, 2016); *Williams*, 2015 WL 5962270 at *1; *Flores*, 2015 WL 4340020 at *3; *Sepehry-Fard*, 2014 WL 2191994 at *2; *Harnish*, 2015 WL 1064442 at*2 (cited in Opp. at 8, 9). Indeed, Plaintiff's own citations to cases that analyzed whether consent allegations were adequate undermine her position that consent allegations are not required at all. (*See* Opp. at 7.) Plaintiff thus attempts (unsuccessfully) to allege lack of consent. But given that she admits she was a BOA customer who must have agreed to the terms of her loan, Plaintiff's allegation that she did not provide her cell phone number does not equate to lack of consent to contact her at a later-acquired number.

### B. Plaintiff Cannot Identify Any "Debt Collection" Activities.

Plaintiff does not dispute that to state a Rosenthal Act claim, she must allege communications made to collect payment on a debt. Nor does she dispute that the communications at issue are limited to two texts regarding a "servicing matter" that did not demand any payment. (Opp. at 10-12; *see also* FAC ¶¶ 19-20.) Plaintiff argues that the communications should be examined in context (Opp. at 11), but the alleged context confirms that she has not pled "debt collection" activities.

Plaintiff admits that BOA is "a large, national bank," that (among other things) "services millions of credit card accounts for consumers." (FAC ¶ 12.) Plaintiff also admits that she incurred debts with BOA in 2007 and 2008. (*Id.* ¶ 17.) Plaintiff does not allege any "demand" for payment at all over the course of seven years (except for the unsupported claim regarding two text messages about a "servicing matter"). (*See generally id.*) Nor does the FAC allege that Plaintiff contacted BOA to ask what "servicing matter" needed her attention. (*Id.*) Plaintiff argues that a demand for payment on Plaintiff's debt should be *assumed* because the FAC "does not allege any reason beyond the debt for BOA to contact her 'about a servicing matter.'" (Opp. at 12.) But there is no legal support for such an assumption, and Plaintiff cites to none. The FAC is devoid of facts showing the challenged text messages were sent to "collect a debt" from her.

5

1    As BOA's opening brief explained, it is insufficient to allege that defendants

2    are "debt collectors" without "any facts that show how [the defendants] were acting

3    in a debt collecting capacity with the meaning of the FDCPA." *Casualt v. Fannie*

4    *Mae*, 915 F. Supp. 2d 1113, 1126 (C.D. Cal. 2012). In *Casault*, the court noted that

5    plaintiff "merely labeled the [defendants] debt collectors," but to state a Rosenthal

6    Act claim, they must at least plead that defendants had been assigned defaulted

7    loans for debt collection purposes. *Id.* "[A] mere conclusory allegation that a

8    defendant was 'collecting on a debt' will not survive a motion to dismiss. *Capron*

9    *v. JPMorgan Chase Bank*, No. 12CV3059 JLS (RBB), 2013 WL 3520435, *4 (S.D.

10   Cal. July 10, 2013) (dismissing FDCPA claim where "Plaintiff [did] not plead any

11   facts plausibly establishing that the purpose of the alleged phone calls was to collect

12   on a debt"); *see also Sanchez v. United States Bancorp*, 09-CV-00718-IEG (JMA),

13   2009 WL 3157486, *5 (S.D. Cal. Sept. 25, 2009) (dismissing Rosenthal Act claim

14   because conclusorily labeling defendant "debt collector" did not suffice). Here,

15   Plaintiff baldly labels BOA as a "debt collector," but does not allege that she

16   defaulted on her loans, or any facts showing that BOA contacted her for payment.

17       Plaintiff's citations to out-of-circuit FDCPA cases are not persuasive. For

18   example, in *Rodriguez v. Fulton Friedman & Gullace, LLP*, the court noted that

19   plaintiff made "numerous allegations" about the defendant's course of conduct.

20   No. H-11-4592, 2012 WL 3756589, *2 (S.D. Tex. Aug. 28, 2012). Similarly, in

21   *Hutton v. C.B. Accounts, Inc.*, the court analyzed the specific facts alleged there,

22   which included a voicemail message that could only be related to a debt. No. 10-

23   3052, 2010 WL 3021904, *2 (C.D. Ill. Aug. 3, 2010). A "servicing" matter in this

24   case does not equate to a demand for payment on a debt. Notably, Plaintiff fails to

25   acknowledge that a court **in this district** found the *Hutton* opinion "unavailing."

26   *Koby v. ARS Nat'l Servs., Inc.*, 09cv0780 JAH (JMA), 2010 WL 5249834, *3 (S.D.

27   Cal. Dec. 23, 2010). Because Plaintiff failed to allege that the messages were sent

28

1 | to collect a debt from her, the Rosenthal Act claim must be dismissed.[2]

2 | ### C. Plaintiff's Derivative UCL Claim Fails.

3 | #### 1. Plaintiff Lacks Standing to Assert a UCL Claim.

4 | BOA demonstrated in its opening brief that Plaintiff has not plausibly alleged

5 | that she lost money or property based on the two free text messages she received,

6 | and she therefore lacks standing to bring a UCL claim. (Mot. at 8.) In response,

7 | Plaintiff cites to authorities that again **undermine** her position. In *In re Google,*

8 | *Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal.

9 | Dec. 3, 2013) (Opp. at 14), the court emphasized that allegations of depleted battery

10 | life and bandwidth supported alleged economic injury only where plaintiffs alleged

11 | facts showing that defendants' conduct actually depleted battery life. *See e.g.*, *id.* at

12 | *7.[3] By contrast, the court found allegations suggesting only that "any harm from

13 | the use of phone resources . . . was *de minimis* . . . [were] insufficient to establish

14 | injury." *Id.* (citing *Hernandez v. Path, Inc.*, Case No. 12–CV–01515 YGR, 2012

15 | WL 5194120 (N.D. Cal. Oct. 19, 2012) (depletion of a few seconds of battery

16 | capacity is *de minimis*)).

17 | The FAC does not come close to the allegations in *Google*, which the court

18 | there considered to be a "close question" barely meeting the pleading standard. *In*

19 | *re Google*, 2013 WL 6248499, at *5. Plaintiffs there alleged their battery was

20 | depleted at least 27 times—each time they downloaded an Android app — and

21 |

22 | [2] If this Court finds that the FAC sufficiently alleges that the messages were sent for debt collection, this further confirms that they were targeted and not the result of a random ATDS. *See Flores*, 2015 WL 4340020 at *4. Because Plaintiff's TCPA claim is a predicate for her Rosenthal Act claim, dismissal of the

23 | TCPA claim requires dismissal of the Rosenthal claim.

24 | [3] Citing *Goodman v. HTC Am., Inc.*, No. C11-1793MJP, 2012 WL 2412070, at *7 (W.D. Wash. June 26, 2012) (plaintiffs sufficiently alleged economic injury

25 | where they "describe[d] in detail how the alleged defect drains their batteries: the application sends fine location data every three hours or whenever the device's

26 | screen is refreshed"); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1054–56 (N.D. Cal. 2012) (standing where the device systematically collected and

27 | transmitted location information). Plaintiff here alleges none of these facts.

28 |

BOA'S REPLY ISO MOTION TO DISMISS
Case No. 3:15-cv-02786-BAS-BGS

sd-679591

specified instances of alleged service interruptions. (*See, id.*) In contrast, Plaintiff

here alleges only that she received two text messages and does not allege how they

reduced her cell phone battery life at all, much less in any way that was not *de*

*minimis*. (FAC ¶¶ 19-20.) At most, Plaintiff's alleged harm is "episodic," rather

than "systemic," and cannot meet the threshold required for actual injury. *Id*;

*Hernandez*, 2012 WL 5194120, at *2.[4] Moreover, although Plaintiff admits that

the messages included "Free Msg," she appears to baldly assert they were not free,

but does not allege that the text messages caused her to incur "unwanted charges."

(Opp. at 15)[5] Plaintiff's assertions, belied by the facts, are facially implausible. *Cf.*

*Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 1056088, at *5 (9th Cir. Mar. 17,

2016) (affirming dismissal of facially implausible UCL claims).

Plaintiff provides no detail as to how these two isolated text messages caused

"wear and tear," "consumed [her] battery life," or "diminished [her] use,

enjoyment, and utility of her cellular telephone." (FAC ¶ 24.) These types of

generalized allegations are precisely what courts have found insufficient to

establish standing. *Cf. LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-

GW(JCGx), 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (no economic

injury where plaintiffs claimed their computers' performance was compromised,

but failed to "allege facts showing that this is true"); *Opperman v. Path, Inc.*, 87 F.

Supp. 3d 1018, 1056 (N.D. Cal. 2014) (no standing because plaintiffs failed to

---

[4] *Hernandez* forecloses Plaintiff's attempt to avoid the pleading requirements by seeking unjustified discovery. *See Hernandez*, 2012 WL 5194120, at *2, n.2 (rejecting plaintiffs' position that discovery will quantify the alleged injury because "[p]laintiff should be able to determine the extent of his injuries without the benefit of discovery").

[5] Plaintiff's reliance on *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937 (C.D. Cal. 2015) (Opp. at 14) also fails. The *Thomas* court found that plaintiff alleged standing through allegations that defendant "repeatedly called Plaintiff's cellular telephone throughout 2013, without his consent or authorization, and that he was charged for these calls." *Id.* at 948. Here, by contrast, BOA texted Plaintiff twice, and Plaintiff was not charged for either text.

sd-679591

"quantif[y] or otherwise articulate[] the alleged resource usage"); *Pietzak v. Microsoft Corp.*, No. CV 15-5527-R, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015) (no standing where plaintiffs alleged TCPA violations caused "financial loss" because "[s]imply stating one suffered financial loss and lost profits, without more, is nothing more than 'conjecture,'" and speculation that fails "to establish harm for the purposes of standing").[6]

### 2. Plaintiff Cannot State a Claim Under the "Unlawful" or "Unfair" Prongs of the UCL.

Plaintiff's "unlawful" prong claim predicated on her failed TCPA and Rosenthal claims also fail as a matter of law. (*See* Mot. at 9 (collecting cases).)

Plaintiff's "unfair" prong claim fares no better. Plaintiff's allegations are not tethered to any public policy, nor does she plausibly allege that any harm caused by BOA's two text messages is not outweighed by the utility of BOA's communications to customers about their accounts. (*Id.* at 10.)

First, regarding the "tethering" test, Plaintiff argues that her "unfair" claim, like her "unlawful" claim, is "based on BOA's alleged violation of the TCPA and Rosenthal Act." (Opp. at 18.) But alleging a violation of a predicate law is not enough to plead an "unfair" claim. If it were, there would be no need for separate "unlawful" and "unfair" prongs of the UCL. Because Plaintiff fails to allege the required "tethering" to a public policy and facts showing that public policy was violated by BOA's acts, Plaintiff's "unfair" claim must be dismissed.[7]

---

[6] *See also Del Vecchio v. Amazon*, No. C11–366–RSL, 2011 WL 6325910 (W.D.Wash. Dec. 1, 2011) (no standing where plaintiffs did not allege that they discerned any difference in the performance of their computers because of cookies); *AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F.Supp.2d 1174, 1185 (E.D. Cal. 2010) (no standing where plaintiff did "not allege any facts that indicate that it incurred costs to update its server security protocols or otherwise analyze the circumstances of the unauthorized server access").

[7] For example, Plaintiff appears to argue (but not allege) that a policy at issue is ensuring debt collectors and debtors are honest, but she does not allege how the two text messages about a "servicing matter" from her own credit card company shows dishonesty related to debt collection.

BOA'S REPLY ISO MOTION TO DISMISS
Case No. 3:15-cv-02786-BAS-BGS

sd-679591

Second, regarding the "balancing" test, Plaintiff simply asserts, without citation, that her bare allegations suffice to show that the utility of BOA's conduct is outweighed by the gravity of harm caused by BOA's conduct. (Opp. at 17.)  As the court found in *Sepehry-Fard*, however, plaintiff failed to state an "unfair" claim based on alleged TCPA violations because "[i]t is not clear how attempting to collect a debt and/or making automated calls would constitute an unfair practice." 2014 WL 122436, at *5.  That is especially true here, where Plaintiff admits she had a relationship with BOA (FAC ¶ 17), BOA allegedly sent two, free text messages regarding a "servicing matter" (*Id.* ¶¶ 19-20), and Plaintiff alleges no facts to support any economic harm caused by these texts.  (*See* Section II C.1.) Plaintiff's theory of "unfairness" is implausible:  the utility of communicating with customers on servicing matters cannot be outweighed by a bald claim that Plaintiff suffered harm from receiving two free text messages.[8]  *Cf. In re Google*, 2013 WL 6248499, at *15 ("unfair" prong dismissed where "the overall benefit to users in receiving free, 'indispensable' services offsets much of the harm they may suffer through the change").  The Court should dismiss her claims with prejudice.  *Cf. Ebner*, 2016 WL 1056088, at *5; *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing claims as implausible with prejudice).

The Court should dismiss Plaintiff's FAC in its entirety.

---

[8] Plaintiff asserts that whether the text messages benefit consumers is a "factual dispute inappropriate for resolution on a motion to dismiss." (Opp at 17.) Plaintiff's inapposite authorities involve much greater alleged harm than two free text messages. (*Id.* at 17-18 (citing *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 589760, at *22 (N.D. Cal. Feb. 14, 2016) (allegations of defendant's repeated data breaches of personal information over six years); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1110 (S.D. Cal. 2011) (defendant's products allegedly contained "dangerous levels of fat and sugar").) Plaintiff's allegations of harm are insufficient on their face, and given the utility of BOA's ability to communicate with its own customers about their accounts, Plaintiff's theory is implausible. *Cf. Sepehry-Fard*, 2014 WL 122436 at *5; *In re Google*, 2013 WL 6248499, at *15.

sd-679591

Dated: April 11, 2016        MORRISON & FOERSTER LLP


                             By:    */s/ Tiffany Cheung*
                                    TIFFANY CHEUNG
                                    TCheung@mofo.com

                             Attorneys for Defendant
                             BANK OF AMERICA, N.A.

sd-679591